24-00542MB

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Scott Wall, Special Agent of the Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state as follows:

## INTRODUCTION

The facts of this case, as more fully detailed herein, are that on the afternoon of May 24, 2024, at approximately 2:45 pm, within the District of Arizona, M. J. was beaten and pistol whipped by Natasha Matthews and Kordell Manuel in the desert near Sells, AZ. While M. J. was being pistol whipped, the pistol fired near M. J.'s head. M. J. was not shot. Matthews and Manuel fled in a silver minivan (SUBJECT VEHICLE). The silver van was subsequently found locked and abandoned. Your affiant is requesting that the Court issue a search warrant to search for evidence, described in Attachment B located in the vehicle further described in Attachment A, in support of an investigation into the aforementioned crime.

## PRELIMINARY BACKGROUND INFORMATION

1. Your affiant, Scott Wall, is a Special Agent of the FBI and is currently assigned to the Indian Country (I.C.) Squad in the FBI's Tucson office. In the course of his official duties, your affiant is responsible for investigating violent crimes within Indian Country occurring within the District of Arizona. Examples of violent crimes your affiant has investigated includes homicides, death investigations, assaults, physical and sexual abuse of children, physical and sexual abuse of adults, rape, and arson. Your affiant has training and experience in investigating such crimes. The experience of your affiant includes six (6) years of investigating federal I.C. violent crime violations. Training includes graduation from the five (5) month long FBI Academy in Quantico, VA, in September 2018, and two-week long Indian Country Criminal Investigation Training Program (ICCITP) course at the Federal Law

Enforcement Training Center (FLETC) in Artesia, NM, in May 2019. Your affiant also has six (6) years of state law enforcement experience as a State Trooper and Detective.

2. Pursuant to 18 U.S.C. § 3052, as an FBI Agent, your affiant is empowered to enforce criminal laws of the United States and to execute search warrants issued under the authority of the United States. Pursuant to 18 U.S.C. § 3107, your affiant is empowered to make seizures under warrant for violation of the laws of the United States.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, investigators, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of the violation of Title 18, United States Code, §§113(a)(3), in that Natasha Matthews and Kordell Manuel assaulted M. J. with a dangerous weapon, with intent to do bodily harm; 924(c)(1)(A), in that a firearm was possessed, brandished and fired during a crime of violence; and 1153, in that the offense occurred within Indian Country and involved a felony assault under section 113, and is located in the SUBJECT VEHILCE is described as:

> A silver colored 2010 Dodge Grand Caravan with Vehicle Identification Number (VIN) 2D4RN5D10AR461847 and Arizona temporary license registration XJA5LS, registered to D. J. and Karen Matthews, currently located at the Federal Bureau of Investigation Tucson Resident Agency (RA) office, in Tucson, AZ;

and is further described in Attachment A. Accordingly, this application requests authority to search the vehicle as described in Attachment A, for evidence of this crime as described in Attachment B.

4. This court has jurisdiction over these offenses under 18 U.S.C. §113(a)(3), 924(c)(1)(A), 1153 because the below-described events occurred within the

confines of the District of Arizona, on the Tohono O'odham Nation Indian Reservation, Indian Country, in Pima County, Arizona. Furthermore, this Court has jurisdiction to issue the requested warrant under Federal Rules of Criminal Procedure, Rule 41.

## STATEMENT OF PROBABLE CAUSE

5. The night of May 23, 2024, Kordell Manuel (MANUEL), M. J., D. J., Kimberly Castillo (CASTILLO), as well as other individuals, were drinking and partying in the Kohatk Village of the Tohono O'odham Nation Indian Reservation, in the District of Arizona. MATTHEWS, MANUEL, and D. J. are enrolled members of the Tohono O'odham Nation, and are known Bloods gang members. M. J. is non-tribal and is not an enrolled member of the Tohono O'odham Nation. He also associates himself as a Bloods gang member.

6. JUAN and M. J. were "lovey-dovey" and "all over each other" on the couch. In a subsequent interview, M. J. admitted to having consensual sex with D. J. in Kohatk.

7. The morning of May 24, 2024, Natasha Matthews (MATTHEWS) met MANUEL, M. J., and D.J. in Kohatk. MATTHEWS is D. J.'s sister. MATTHEWS and MANUEL both have prior felony convictions, and both are prohibited from possessing firearms. MATTHEWS, MANUEL, M. J., and D. J. all traveled in their vehicles from the Kohatk Village to Sells, also located within the boundaries of the Tohono O'odham Nation. In Sells, the four went to Frank Wilson's (WILSON) residence to continue to "party."

8. At approximately 2:45 pm, the Tohono O'odham Police Department (TOPD) received a 911 call for service regarding "shots fired" in the desert area southwest of the Wilson residence. TOPD received another 911 call from a neighbor of the Wilson residence, as well as two additional 911 calls for service.

9. When TOPD Patrol Officers and Detectives arrived to the area of the Wilson residence, the responding Officer observed a silver minivan (SUBJECT

VEHICLE), with temporary Arizona registration tag XJA5LS, being driven by Natasha MATTHEWS, leaving the area at a high rate of speed. The Officer recognized MATTEHWS based on previous contacts with her.

10. In subsequent interviews, it was learned that MATTEHWS and MANUEL accused M. J. of raping D. J. In the desert area, southwest of the WILSON residence, MATTHEWS and MANUEL got M. J. out of the minivan on his hands and knees, stole his phone, and began to beat him by kicking, stomping, and pistol whipping him. MATTHEWS yelled to the effect: "why did you rape my sister," and "why did you touch her?" MATTHEWS held the black pistol as she pistol whipped M. J.. On the third strike to M. J.'s head, the pistol fired. The pistol went off right next to M. J.'s head near his ear. M. J. was not shot when the gun fired. M. J. later told law enforcement he is very familiar with guns and believed MATTHEW'S black pistol was a Taurus brand 9mm. MATTHEWS and MANUEL fled in the silver minivan.

11. As Officers and Detectives responded to the calls for service, they contacted M. J. near the WILSON residence. WILSON was in bed, and LOPEZ exited the residence.

12. M. J. had been beaten up and was bleeding from his face. He stated: they "shot at me and tried to kill me." While clearing the house, TOPD Detectives located D. J. in the northwest bedroom closet. She only had a t-shirt and underwear on. She stated she had asked LOPEZ if she could take a shower. D. J. was asked if she had been sexually assaulted. She answered she was not sure. D. J. told Detectives that earlier, she had told her sister [MATTHEWS] to "leave it alone" and that "everything was all right." D. J. was asked if that was why she [MATTHEWS] shot at M. J., to which D. J. answered, "yes." D. J. was subsequently transported to the Indian Health Services hospital in Sells where she was examined for a potential alcohol/drug overdose. She remained unresponsive for several hours.

13. M. J. subsequently traveled with TOPD Detectives to show them the area where he was beaten and where the gunfire occurred in the desert. Fresh tire tread tracks, and

    shoe sign/impressions could be seen in the dirt, along with fresh sign of where M. J.'s knees were in the dirt.

14. Law Enforcement worked with T-Mobile to locate M. J.'s stolen cellphone, which led law enforcement to the back alleyway of Basha's grocery store in Sells. The silver minivan was located, and found to be abandoned and locked. This was approximately a half mile from the Wilson residence. Two cell phones could be seen in plain view, sitting on the dash of the windshield. One of them is believed to be M. J.'s phone that was stolen. The located van bore AZ temporary registration tag XJA5LS, and VIN #: 2D4RN5D10AR461847. The van's registered owners return to D. J. and Karen Matthews.

15. MATTHEWS was subsequently located. She spoke with law enforcement. Her story, generally, was congruent with the events, however, she denied anything to do with M. J. being beaten or possessing a gun. MANUEL has still not been located since fleeing.

16. On 05/29/2024, a single 9mm spent shell casing was located at the precise location M. J. had shown TOPD Detectives.

////

## **CONCLUSION**

Based on the aforementioned information, I respectfully submit that there is probable cause to believe that evidence described in Attachment B will be located in the SUBJECT VEHICLE as described in Attachment A and will support an investigation related to violations of 18 U.S.C. §§113(a)(3), 924(c)(1)(A), 1153.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully Submitted

SCOTT WALL
Digitally signed by SCOTT WALL
Date: 2024.05.31 14:26:11 -07'00'

Special Agent Scott R. Wall
Federal Bureau of Investigation

Subscribed electronically and sworn to me telephonically,
this 31st day of May, 2024

Honorable Eric J. Markovich
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF ITEM TO BE SEARCHED

A silver colored 2010 Dodge Grand Caravan with Vehicle Identification Number (VIN) 2D4RN5D10AR461847 and Arizona temporary license registration XJA5LS (SUBJECT VEHICLE), registered to D. J. and Karen Matthews, currently located at the Federal Bureau of Investigation Tucson Resident Agency (RA) office, in Tucson, AZ.





24-00542MB

## ATTACHMENT B

### ITEMS TO BE SEIZED

1. Swabs of any and all suspected blood, and/or other reddish-brown substance.

2. DNA Swabs of steering wheel, door handles, gear shift knob etc.

3. Any and all items containing and/or stained with any suspected blood or reddish-brown substance, including clothing.

4. Any and all alcohol containers, drugs/narcotics in any form, and drug paraphernalia.

5. Any and all receipts, documentation, or indicia indicating the whereabouts of the vehicle or its occupants on or near 05/24/2024, and ownership of the vehicle.

6. Any and all firearms, ammunition, or firearm accessories.

7. Any gang related paraphernalia.

8. Any cellular telephones.